UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAUL JOHN CANTON,

        Canton,

v.                                              Case No: 6:23-cv-1190-EJK

ATTORNEY GENERAL, UNITED
STATES OF AMERICA,
SECRETARY OF HOMELAND
SECURITY, ACTING DIRECTOR
OF U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
FIELD OFFICE DIRECTOR OF
U.S CITIZENSHIP AND
IMMIGRATION SERVICES,
ORLANDO, and UNITED STATES
CITIZENSHIP AND
IMMIGRATION SERVICES,

        Defendants.

## ORDER

This cause comes before the Court on Defendants' Motion to Dismiss (the "Motion"), filed September 29, 2023. (Doc. 39.) On October 10, 2023, Plaintiff filed a Response in opposition to the Motion. (Doc. 43.) Upon consideration, the Motion is due to be granted in part and denied in part.

**I.    BACKGROUND**

The parties do not dispute the relevant factual allegations. Paul John Canton is a noncitizen United States Marine Corps veteran. (Doc. 38 ¶ 3.) Canton has never been a Lawful Permanent Resident ("LPR"). Instead, he came to the United States on

an exchange visitor (J) visa. (*Id*. ¶¶ 14, 18.) He was born in New Zealand, which does not grant birthright citizenship.[1] (*Id*. ¶ 14.) Prior to his military service, Canton was a citizen of Australia. (*Id*.) However, his Australian citizenship was revoked after his service in a foreign military. (*Id*.) Despite overstaying his J visa and not being a LPR or a United States citizen, Canton was recruited into and enlisted in the Marines on March 29, 1991, through the Delayed Entry Program ("DEP").[2] (*Id*. ¶ 18.) Canton delayed entry until November 11, 1991, his active service date. (*Id*. ¶ 5.) Canton believed himself to be a United States citizen as a result of his military service, recruiters' promises, and his honorable discharge. (*Id*. ¶ 4.) However, Canton learned on June 12, 2019, that he was, in fact, not a United States citizen. (*Id*. ¶ 5.)

---

[1] Although Plaintiff represents that New Zealand does not have birthright citizenship, a review of New Zealand law shows that at the time Plaintiff was born, New Zealand did in fact have birthright citizenship. *See* N.Z. Citizenship Act 1977(6)(1)(a) (amended Apr. 21, 2005) ("A person is a New Zealand citizen by birth if—the person was born in New Zealand on or after 1 January 1949 and before 1 January 2006; or the person was born in New Zealand on or after 1 January 2006, and, at the time of the person's birth, at least one of the person's parents was—a New Zealand citizen; or entitled in terms of the Immigration Act 2009 to be in New Zealand indefinitely, or entitled to reside indefinitely in the Cook Islands, Niue, or Tokelau."). Since Plaintiff was born August 5, 1971, he had birthright citizenship in New Zealand. (Doc. 1-2 at 26.)
[2] According to the Marine Corps website, "the DEP grants you the opportunity to postpone recruit training for 365 days[.]" *See Marines*, https://www.marines.com/become-a-marine/process-to-join/delayed-entry-program.html. (last visited July 25, 2024).

With this discovery, Canton applied for naturalization under Section 329 of the Immigration and Nationality Act ("INA § 329"), 8 U.S.C. § 1440. (*Id.*) The INA § 329(a) provides in pertinent part that:

> [a]ny person who, while an alien or a noncitizen national of the United States, has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States . . . during any [] period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment, reenlistment, extension of enlistment, or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, or on board a public vessel owned or operated by the United States for noncommercial service, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence.

8 U.S.C. § 1440(a).

The Persian Gulf Conflict was designated by Executive Order to have existed from August 2, 1990, to April 11, 1991. Exec. Order 12939, 59 Fed. Reg. 61231 (Nov. 22, 1994). After an administrative appeal, the United States Citizenship and Immigration Services ("USCIS") denied Canton's Form N-400, Application for Naturalization. (Doc. 38 ¶ 5.) After obtaining *pro bono* counsel, Canton filed a second N-400, which USCIS also denied after an administrative appeal. (*Id.* ¶¶ 5–6.) USCIS denied Canton's naturalization because, although he enlisted during the designated

period of hostilities for the Persian Gulf Conflict, he did not serve in active duty until after the designated period, making him ineligible for Section 1440 naturalization. (*Id.* ¶ 7.) Even if he had been considered active duty during a period of hostility—which USCIS found he was not—USCIS also found that Canton did not demonstrate good moral character for a year prior to filing his application, which is a requirement in addition to the active-duty service requirement, because he registered to vote claiming to be a United States citizen and voted in several elections within a year prior to filing his application, in violation of federal law. (Docs. 1-2 at 64–65; 38 ¶ 22.) This fact also precluded Canton from adjusting his status and seeking naturalization through his United States citizen spouse. (Doc. 38 ¶ 22.)

Plaintiff filed his original Complaint on June 27, 2023. (Doc. 1.) With Defendants' consent, Plaintiff filed an Amended Complaint on September 15, 2023. (Doc. 38.) Canton brings the following three claims against Defendants: Count I requests that the Court issue a writ of mandamus to compel USCIS to adjudicate Canton's naturalization application pursuant to 28 U.S.C. § 1361. (*Id.* ¶¶ 19–22.) Count II requests that the Court set aside USCIS's denial of Canton's naturalization applications, pursuant to the Administrative Procedures Act (the "APA"), 5 U.S.C. § 706(2), because it is not in accord with INA § 329 or USCIS Policy Memo PA-2021-24. (*Id.* ¶¶ 23–25.) Finally, in Count III, Plaintiff requests the Court review *de novo* Canton's denied naturalization application pursuant to the INA, 8 U.S.C. § 1421(c). (*Id.* ¶¶ 23–25.)

## II. STANDARD

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction dictated by Congress and constrained by Article III of the Constitution. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). Subject-matter jurisdiction is generally "an antecedent question" that must be resolved before consideration of the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). Without it, a district court lacks the power to hear a case and it must be plead at the outset. *See Am. Tobacco Co.*, 168 F.3d at 409. A facial attack on the complaint requires the court to accept the allegations in the complaint as true and determine whether those allegations sufficiently alleged a basis for subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Conversely, a factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings. *Id.* Here, Defendants assert a facial challenge to Plaintiff's Mandamus and APA claims. (Doc. 39 at 12–14.)

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 55 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which if accepted as

true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). However, the Court need not accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*. "[T]he power to make someone a citizen of the United States has not been conferred upon the federal court, like mandamus or injunction, as one of their generally applicable equitable powers." *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988). Thus, an applicant for naturalization bears the burden of proving that they satisfy all the statutory requirements for citizenship. *Id*. at 886. Any doubts concerning an applicant's statutory eligibility for naturalization are resolved in favor of the United States and against the applicant. *Molsen v. Young*, 182 F.2d 480, 482 (5th Cir. 1950), *vacated on other grounds*, 340 U.S. 880 (1950) (citing *United States v. Manzi*, 276 U.S. 463, 467 (1928)).[3]

## III.   DISCUSSION

### A.   The Mandamus Act (Count I)

Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

A writ of mandamus is an extraordinary remedy available only in the clearest and most compelling of cases. *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 392 (2004); *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003). The Act is intended to provide plaintiffs relief only after they have exhausted all other avenues of relief and only if the defendant owes them a clear nondiscretionary duty. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Thus, the Eleventh Circuit has held that a district court may exercise jurisdiction over a mandamus action if: 1) the plaintiff has a clear right to the relief requested; 2) the defendant has a clear duty to act; and 3) no other adequate remedy is available. *Serrano v. United States AG*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash*, 327 F.3d at 1258.) Lastly, the party seeking a writ of mandamus has the burden of showing that their right to issuance of the writ is "clear and indisputable." *Carpenter v. Mohawk Indus. Inc.*, 541 F.3d 1048, 1055 (11th Cir. 2008).

In this case, Defendants argue that Plaintiff fails to establish this Court has subject matter jurisdiction to issue a writ of mandamus because the INA, 8 U.S.C. § 1421(c), provides an adequate and exclusive remedy for review of the denial of Plaintiff's naturalization application. (Doc. 39 at 13.) Section 1421(c) states:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Plaintiff concedes that the INA provides an adequate remedy of judicial review but argues that the Court should issue a writ of mandamus because it will compel USCIS to "fulfill its nondiscretionary duties, promptly, providing a swifter and more efficient remedy." (Doc. 43 at 6.) The Court rejects Plaintiff's argument for two reasons. First, the Court agrees with both parties that section 1421(c) of the INA provides an adequate remedy for review of the denial of Plaintiff's naturalization applications. *Serrano*, 655 F.3d at 1263. Second, the Court agrees with Defendants that Plaintiff's Amended Complaint does not identify any remaining nondiscretionary duty owed by USCIS that the Court could compel, because the agency has fully adjudicated both of Plaintiff's naturalization applications. (Doc. 38 ¶¶ 19–22.) For these reasons, Plaintiff has failed to establish that the Court has subject matter jurisdiction to issue a writ of mandamus. Accordingly, Count I is due to be dismissed.

## B. The Administrative Procedures Act (Count II)

The APA does not independently confer subject-matter jurisdiction: "28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal-question jurisdiction." *Perez v. USCIS*, 774 F.3d 960 (11th Cir. 2014) (citing *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977)). Under the APA, a reviewing court may compel agency action unlawfully withheld, and it may set aside agency actions, findings, and conclusions found to be not in accordance with the law. 5 U.S.C. § 706(1)–(2)(A).

Defendants, citing a string of cases from this District in support, argue that Plaintiff fails to establish that this Court has subject matter jurisdiction to review USCIS's denial of Plaintiff's naturalization applications under the APA. They argue

that courts in this Circuit have dismissed APA claims when plaintiffs simultaneously seek relief under section 1421(c) because section 1421(c) review precludes APA review. (Doc. 39 at 12.) Plaintiff, with no cases cited in support, argues that his APA claim should survive because he raises issues that go beyond the mere denial of naturalization. (Doc. 43 at 6.) Plaintiff generally contends that he has alleged procedural irregularities, violation of his due process rights, or other actions that will not be fully addressed through the narrow lens of section 1421(c). (*Id.*) The Court agrees with Defendant.

The Eleventh Circuit has held that section 1421(c) gives plaintiffs like Canton an adequate remedy because it allows *de novo* review of USCIS's denial of a naturalization application after they exhaust their administrative remedies. *Heslop v. Att'y Gen. of U.S.*, 594 F. App'x 580, 584 (11th Cir. 2014). Pursuant to this holding, courts in this District have recognized this same limitation in dismissing APA claims challenging naturalization decisions when plaintiffs simultaneously seek section 1421(c) relief. *See Sidibe v. Cissna*, No. 3:19-CV-1129-BJD-JBT, 2021 WL 9408890, at *2 (M.D. Fla. Jan. 22, 2021) ("Because the INA provides judicial review of a denial of an application for naturalization, an APA claim seeking similar relief must be dismissed."); *Liaquat v. Att'y Gen. of United States*, No. 6:18-CV-2116-RBD-LRH, 2019 WL 5399566, at *2 (M.D. Fla. Oct. 4, 2019), *report and recommendation adopted*, 2019 WL 5391376 (M.D. Fla. Oct. 22, 2019) (holding that, pursuant to *Heslop*, plaintiff's APA claim should be dismissed for lack of subject matter jurisdiction when plaintiff did not present any argument or legal authority that would support allowing both his

section 1421(c) and APA claims to proceed).

For these reasons, the Court finds that Plaintiff has failed to establish that the Court has subject matter jurisdiction to review USCIS's denial of his naturalization applications, pursuant to the APA, when he simultaneously seeks section 1421(c) review. Accordingly, Count II is due to be dismissed.

### C. Section 1421(c) Review (Count III)

Lastly, Defendants argue that the Court should dismiss Plaintiff's Amended Complaint, pursuant to Rule 12(b)(6), because the Amended Complaint and the supporting documentation establish, as a matter of law, that Plaintiff is not entitled to section 1440 naturalization because he was not an active-duty military member during the Persian Gulf Conflict. (Doc. 38 at 14–18.) Plaintiff argues that, as a matter of law, he is entitled to naturalization under section 1440, pursuant to USCIS Policy Memo PA-2021-24, because he enlisted during the Persian Gulf Conflict. (Doc. 43 at 7–9.) Plaintiff further argues that the Court should equitably grant him naturalization "in the interest of justice considering his honorable service which caused him to be stateless, the Marines' affirmative misconduct. And the purpose implicit in the relevant legislation and Policy Alert." (Doc. 38 ¶ 18.)

As a threshold matter, the Court notes that when Plaintiff amended his Complaint (Doc. 1), the Second Amended Complaint (Doc. 38) did not contain any of the exhibits included with the original complaint. (*Compare* Doc. 1-2 *with* Doc. 38.) As such, Plaintiff's Official Military Personnel File (OMPF), Form N-400 applications, and USCIS denial letters are not before the Court for its *de novo* section

1421(c) review. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (internal citation and quotations omitted).) Therefore, the Court will allow Plaintiff 14 days from the date of this Order to file an amended complaint as to Count III only. Thereafter, Defendant will have 14 days to file a renewed motion to dismiss as to Count III only.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Doc. 39) is **GRANTED IN PART and DENIED IN PART** as follows:

1. Counts I and II are **DISMISSED**.

2. Plaintiff shall have through **August 20, 2024,** to file an amended complaint as to Count III only. Thereafter, Defendants shall have through **September 3, 2024,** to file a renewed motion to dismiss as to Count III only.

3. Otherwise, the Motion is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2024.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE